312 Ga. 276
FINAL COPY

S21A0997.  TOWNSEND v. THE STATE.

NAHMIAS, Chief Justice.

Appellant Brandon Townsend was convicted of two counts of malice murder in connection with the deaths of Krystal Spainhour and Judy Potts. He appeals, arguing only that his trial counsel provided ineffective assistance by not requesting a jury instruction on voluntary manslaughter as a lesser offense. Because Appellant has not shown that his trial counsel performed deficiently, we affirm.[1]

---

[1] The crimes occurred on January 9, 2019. In May 2019, a Whitfield County grand jury indicted Appellant for two counts each of malice murder, felony murder based on aggravated assault, aggravated assault, and aggravated battery. At a trial from September 9 to 12, 2019, the jury found Appellant guilty of all charges. The trial court imposed consecutive sentences of life in prison without the possibility of parole on the malice murder counts; the felony murder counts were vacated, and the aggravated assault and aggravated battery counts merged. Appellant filed a timely motion for new trial, which he later amended with new counsel. After an evidentiary hearing, the trial court denied the motion in March 2021. Appellant then filed a timely notice of appeal, and the case was docketed to the August 2021 term of this Court and submitted for a decision on the briefs.

1. The evidence presented at Appellant's trial showed the following. Appellant lived in Dalton with his friend and former co-worker Spainhour and her mother Potts on and off for several years. At 4:45 p.m. on January 8, 2019, Spainhour called 911. She told the operator that Appellant had been drinking and arguing with her and her mother. Potts then took the phone from Spainhour and said that Appellant had approached the two women "hollering and screaming." Potts also said, "I have hit him in his face, and if he keeps it up, I might do it again." A loud argument between Appellant, Potts, and Spainhour can be heard in the background throughout the audio-recorded call.

When a Whitfield County sheriff's deputy responded to the 911 call, Potts told him that Appellant had screamed in her face and "backed her down" until she tripped over a chair, after which she slapped him. Appellant told the deputy that he was sitting in the living room when he heard Potts yelling at him through a door, and upon opening the door, Potts slapped him two or three times and then he "backed her down" and she tripped over the chair. The

2

deputy ultimately told Appellant to leave the house until things calmed down.

The next day, Spainhour went to care for an elderly family member. When Spainhour's stepbrother drove her home at about 7:45 p.m., he saw Appellant inside the house. Around 3:00 the next morning, Appellant called the sheriff's office and said, "I need to turn myself in." A 911 operator called him back to gather more information, at which point he said, "I lost my mind earlier and I choked two ladies." Appellant also told the operator that Spainhour had said something to him that "triggered" him.

When law enforcement officers arrived at the house, they found Spainhour lying dead on a couch, covered with a blanket, and Potts lying dead in her bed, also covered with a blanket. Both women had their faces severely beaten, their throats cut, and stab wounds to their abdomens. Appellant, who was described by deputies as "calm and cooperative," was taken into custody.

During two custodial interviews, Appellant gave the following account of what led to Spainhour's and Potts's deaths. On the night

3

of January 8, he had returned to the house, apologized for raising his voice, and was allowed back inside. While Spainhour was away caring for her family member the next day, Appellant drank alcohol, slept five or six hours, and at some point became angry and flipped over a coffee table in the living room. When Spainhour got home, she confronted him about his drinking and the table being overturned. Spainhour told Potts to "call the law," at which point Appellant "snapped" and "lost his temper." He grabbed Spainhour and began choking her on the living room floor. Potts tried to help Spainhour, and Appellant grabbed her and began choking her as well. Appellant choked both women at the same time until they stopped moving. Then he stomped on them, stabbed them, and cut their throats because he was unsure if they were alive and did not want them to "lay [sic] there and suffer."

When Appellant was asked what made him "snap," he responded: "I don't even remember what [Spainhour] said, honestly, but it's not her fault. It's me. I lost it. I've got no excuse." He also said, "There really wasn't no fighting. I choked them out." Appellant

4

also admitted that he moved Spainhour's body to the couch and Potts's body to the bed and changed his clothes before calling the sheriff's office.

Appellant had cuts and scratches on his back, shoulders, neck, head, face, hands, and heel, as well as a knot on the top of his head and rug burns on his knees. Some of the marks appeared to come from fingernail scratches, and Spainhour had "debris" under her fingernails. When Appellant was asked if his injuries were the result of the women defending themselves, he answered, "Probably, yeah." He said the knot on his head came from Potts striking him with a phone while she was fighting back. The cause of death for both victims was later determined to be manual strangulation, with blunt force injuries to the head and torso as significant contributing factors; the knife wounds were inflicted post-mortem.

At trial, the State also offered into evidence several pages of a notebook that Appellant wrote in before and after the killings. Some passages appeared to describe the events of January 8 and 9, including: "I did that s**t. No appeals"; "Y'all slow as f**k retarded

bird brains"; "I break y'all's rules and beat you. Why, because y'all suck"; "Who goes and tattles, a dumbass"; "I wring that neck"; and "I'll wring your god**mn neck."

Appellant did not testify at trial. His defense was that he was insane at the time he killed Spainhour and Potts. Dr. Samuel Perri, a forensic psychologist with the Georgia Department of Behavioral Health and Developmental Disabilities, evaluated Appellant before trial and was called as an expert witness by the defense at trial. Dr. Perri testified that "given the nature of the offense, . . . I think there is a mental issue going on." He also discussed reviewing a diagnostic exam that Appellant had completed in the past that listed prescriptions for the antidepressant drugs Zoloft, Effexor, and Wellbutrin, as well as Seroquel, an antipsychotic drug. Appellant's counsel also pointed to his repeated declarations during the post-killing 911 call and in interviews that he had "lost his mind," and argued that evidence presented about Appellant's long-term use of drugs and alcohol showed an attempt to self-medicate for underlying mental illness.

However, in a video recording of one interview that was played for the jury, Appellant said that he had not used methamphetamine for several months leading up to the killings. And Dr. Perri also testified that during the evaluation, Appellant said that he would know the difference between right and wrong, although at the time of the killings he was "not thinking right and wrong." Dr. Perri also found no evidence of a delusional compulsion that would have "overmastered" Appellant's will to have resisted committing the crimes. The trial court instructed the jury on the potential verdicts of not guilty, not guilty by reason of insanity, guilty but mentally ill, guilty but with an intellectual disability, and guilty, and those options were provided on the verdict form. The jury found Appellant guilty.

2. Appellant claims that his trial counsel provided ineffective assistance by failing to request a jury instruction on the lesser offense of voluntary manslaughter.[2] To prevail on this claim,

---

[2] In stating his claim in the enumeration of error section of his brief, Appellant says that his trial counsel also "failed to present evidence of passion

7

Appellant must show that his counsel's performance was professionally deficient and that he suffered prejudice as a result. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, Appellant must show that his lawyer performed his duties in an objectively unreasonable way, considering all of the circumstances and in light of prevailing professional norms. See id. at 687-690.

> "This is no easy showing, as the law recognizes a 'strong presumption' that counsel performed reasonably, and Appellant bears the burden of overcoming this presumption. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, 'decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.'"

*Velasco v. State*, 306 Ga. 888, 892 (834 SE2d 21) (2019) (citation omitted). To prove prejudice, Appellant must demonstrate that there is a reasonable probability that, but for counsel's deficiency,

and provocation," but when Appellant restates his claim in the argument section, it does not include this language, and he makes no argument on this point. Thus, this issue is abandoned. See Supreme Court Rule 22; *Thompson v. State*, 304 Ga. 146, 153 (816 SE2d 646) (2018).

the result of the trial would have been different. See *Strickland*, 466 U.S. at 694. If Appellant makes an insufficient showing on one part of the *Strickland* test, we need not address the other part. See id. at 697; *Velasco*, 306 Ga. at 892.

> Under Georgia law,
>
> [a] person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

OCGA § 16-5-2 (a). The trial court is required to grant a defendant's request for a jury instruction on voluntary manslaughter if there is slight evidence to support the charge. See *Johnson v. State*, 297 Ga. 839, 842 (778 SE2d 769) (2015). Appellant contends that a voluntary manslaughter instruction was supported by evidence showing that he was provoked by Potts's and Spainhour's violence toward him, including the 911 call during which Potts said that she would strike

9

Appellant again, the debris found under Spainhour's fingernails, and his injuries.

"Decisions about which defenses to present and which jury charges to request are classic matters of trial strategy, and pursuit of an all-or-nothing defense is generally a permissible strategy." *Velasco*, 306 Ga. at 893. In this case, both of Appellant's trial attorneys testified at the hearing on the motion for new trial that they concluded that the evidence did not support a voluntary manslaughter theory. Appellant's lead counsel also explained that he thought that pursuing a defense theory of not guilty by reason of insanity offered the best chance of success and worried that presenting a voluntary manslaughter theory would "water down" the insanity defense. Co-counsel added that when discussing possible defenses, Appellant said that he did not want to "put any blame on the victims."

If there was any evidence to support a voluntary manslaughter

instruction (an issue we need not decide), it was very weak.[3]

Considering all of the circumstances, we cannot say that trial counsel's strategic decision to pursue an insanity defense and not to request a voluntary manslaughter charge was patently unreasonable. See, e.g., *Vann v. State*, 311 Ga. 301, 304-305 (857 SE2d 677) (2021) (concluding that trial counsel did not perform deficiently by deciding not to request a voluntary manslaughter instruction where "[a] competent attorney could have assessed that a voluntary manslaughter defense was either unavailable or weak because the evidence did not show, or only questionably showed,

---

[3] See *Hudson v. State*, 308 Ga. 443, 446 (841 SE2d 696) (2020) (explaining that "it is well established that words alone, regardless of the degree of their insulting nature, will not in any case justify the excitement of passion so as to reduce the crime from murder to manslaughter" (citation and punctuation omitted)); *Johnson*, 297 Ga. at 843 (explaining that evidence of the appellant's "generally antagonistic relationship with the victim, even to the extent it involved [prior] physical confrontations, did not require a voluntary manslaughter charge"); *Jones v. State*, 296 Ga. 663, 666 (769 SE2d 901) (2015) (holding that "the trial court [could] determine, as a matter of law, that the one-day interval between that possible provocation and the killings was 'sufficient for the voice of reason and humanity to be heard' by [a]ppellant, so that 'the killing[s] shall be attributed to deliberate revenge and be punished as murder,' OCGA § 16-5-2 (a)," and citing similar holdings where the interval was only "a few hours" and "three to four hours"), disapproved of on other grounds by *Veal v. State*, 298 Ga. 691, 703 (784 SE2d 403) (2016).

that [the defendant] had been seriously provoked," but "did show, on the other hand, an opportunity for [the defendant] to cool down"); *Velasco*, 306 Ga. at 893-894 (holding that trial counsel did not perform deficiently by failing to request a voluntary manslaughter instruction, because there was a lack of evidence to support the instruction and the defendant maintained that he acted in self-defense). Thus, Appellant has failed to show that his trial counsel performed deficiently, and his claim of ineffective assistance of counsel fails.

*Judgment affirmed. All the Justices concur, except Bethel, J., disqualified, and Colvin, J., not participating.*

Decided August 10, 2021.

Murder. Whitfield Superior Court. Before Judge Minter.

*Joshua J. Smith*, for appellant.

*Herbert M. Poston, Jr., District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, William C. Enfinger, Assistant Attorney General*, for appellee.