313 Ga. 48
FINAL COPY

S22A0059. SAXTON v. THE STATE.

NAHMIAS, Chief Justice.

Appellant Chandler Saxton was convicted of malice murder and a firearm offense in connection with the shooting death of John Jones. In his sole enumeration of error in this appeal, he contends that the trial court erred by allowing the State's lead investigator to testify about the direction in which one of the bullets that struck Jones traveled. Assuming without deciding that this testimony was erroneously admitted, it was harmless, so we affirm.[1]

---

[1] The crimes occurred on July 31, 2014. In September 2015, a Muscogee County grand jury indicted Appellant for malice murder, felony murder, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. The final count was bifurcated before Appellant's trial, which began on July 18, 2016. On July 21, the jury found him guilty of the other counts. The trial court sentenced Appellant to serve life in prison without the possibility of parole for malice murder and five consecutive years for possession of a firearm during the commission of a felony. The court nolle prossed the count of possession of a firearm by a convicted felon and merged the remaining counts (although the felony murder count was actually vacated by operation of law, see *Malcolm v. State*, 263 Ga. 369, 374 (434 SE2d 479) (1993)). Appellant filed a timely motion for new trial, which he amended twice through new counsel in December 2020 and January 2021.

1. The evidence presented at Appellant's trial showed the following. Appellant was involved in a romantic relationship with the mother of Jones's child and was "jealous" of Jones. In April or May 2014, after Jones said during a phone call that he and the child's mother would "always have history," Appellant replied, "Well, you know I can make you disappear."

On the evening of July 31, 2014, Jones's friend Jaqwuane Crocker drove Jones to a gas station and convenience store on Illges Road in Columbus so that Jones could fill a gas can. Crocker testified as follows. Jones paid for the gas inside the convenience store and then began filling his container at one of the fuel pumps, while Crocker put gas in his car at an adjacent pump. A man, whom Crocker did not know but identified at trial as Appellant, approached Jones, and the two men talked calmly. Crocker saw Jones lean over to put the gas can down and heard one of the men say, "You a little man folk." Crocker then heard gunshots and ran

After a hearing, the trial court denied the motion in April 2021. Appellant then filed a timely notice of appeal, and his case was docketed to the term of this Court beginning in December 2021 and submitted for a decision on the briefs.

2

away. Moments later, he ran back toward the gas station and saw that Jones had been shot and Appellant had fled. Jones then pulled out his own gun and shot randomly toward the surrounding buildings before collapsing behind Crocker's car.

Crocker called 911, took Jones's gun (which Crocker had not seen before the shooting), and hid it in some nearby bushes. When police officers arrived, Crocker admitted that he had taken Jones's gun and showed them where it was hidden.[2] Another eyewitness testified that a man had approached Jones and then "just pulled out a gun and started shooting." Jones, who had been shot twice, was transported to a hospital, where he died two days later.

The lead investigator obtained surveillance video recordings

---

[2] On cross-examination, Crocker acknowledged that even though he had admitted to police officers that he had removed Jones's gun and said during a later police interview that he regularly smoked marijuana, he was not charged with any crimes based on that conduct. Crocker also admitted that in 2013, he was convicted of possession of marijuana; in 2016, he was convicted of possession of cocaine with intent to distribute and possession of a firearm during the commission of a crime; and at the time of trial, he was on probation and facing felony drug charges in Muscogee County. Crocker said that he hoped that his testimony would result in "a good deal" with the State, but on re-direct examination, he said that no one had discussed his current charges in connection with his testifying or promised him anything in exchange for his testimony.

from the gas station and convenience store. At trial, the prosecutor played portions of the recordings, which show the following. At 7:32 p.m., the man whom Crocker identified at trial as Appellant entered the convenience store. About three minutes later, Jones and Crocker pulled into the gas station. Jones went inside the store and paid the cashier, without any apparent interaction with Appellant; Jones then exited the store and began filling his gas container at a pump. Right after Jones exited, Appellant left the store, stood outside the door for about 25 seconds, and then walked toward Jones. After the two men spoke to each other for roughly 15 seconds, Jones put down the gas container; a few seconds later, Appellant suddenly pulled out a handgun and fired at Jones, who was facing Appellant and had nothing visible in his hands. As Appellant fired three more shots, Jones turned to his right and ran, ducking behind Crocker's car, which was parked at the adjacent pump. Crocker, who was standing near the driver-side door of his car, fled. After Appellant ran down the street and out of view, Jones, who had blood on the front and back of his shirt, emerged from behind the car firing his own gun

4

several times toward the nearby buildings. He then collapsed near the trunk of the car. Crocker ran back toward the car, apparently talking on a cell phone, took the gun from Jones's hand, and ran away.

On the day after the shooting, the police gave the news media a still photo of the shooter taken from one of the video recordings. Two days later, Appellant turned himself in at a Columbus police station. He did not testify at trial or introduce any evidence. Closing arguments were not transcribed, but based on the final charge to the jury, it appears that he asserted claims of self-defense and voluntary manslaughter.

2. In this Court, Appellant's sole contention is that the trial court erred by allowing the State's lead investigator to testify about the trajectory of one of the bullets that struck Jones. As explained below, we need not decide whether the court abused its discretion by admitting this testimony, because any such evidentiary error was harmless.

(a) Before trial, the parties stipulated to the authenticity of the

report of Jones's autopsy, with the conditions that the medical examiner who performed the autopsy would not testify at trial and that the report would be introduced into evidence during the State's case-in-chief. During the trial, the prosecutor told the court outside the presence of the jury that he intended to have the lead investigator testify about the report, and Appellant's counsel agreed. The investigator's direct examination focused on the surveillance videos. Toward the end of the examination, the prosecutor informed the jury of the stipulation, and the autopsy report was admitted into evidence (and later given to the jury during its deliberations).

In pertinent part, the autopsy report said the following. Jones had been shot twice, resulting in four gunshot wounds to his body that caused his death, and the manner of death was homicide. One of the bullets, which caused two gunshot wounds, entered the left side of Jones's chest and exited his back, traveling from front to back, left to right, and downward. The other bullet also caused two gunshot wounds — one to Jones's right thigh and one to his left buttock — but the medical examiner could not determine which

6

wound was caused by the bullet's entry and which wound was caused by its exit.

During his testimony, the investigator relayed this information from the report. The prosecutor then said:

> In your investigation, knowing what you know from the autopsy report and from the video — I know the autopsy report states that it's unclear which, the thigh or buttock wound, is an entry or exit. Based on you observing the video, do you believe that you could see which is which, which is the exit, which is the entry wound?

Appellant's counsel objected, arguing that the investigator had not been qualified as an expert and that, alternatively, the jurors could determine the issue for themselves by viewing the surveillance recordings. The trial court ruled that the investigator could answer the prosecutor's question, "if he's able to make that determination." The investigator then testified, "As . . . Jones turned to run and the shots continued to be fired in his direction, the most obvious would be that the bullet would have entered in through his left buttock[ ], which means the exit would have been to the right thigh."

(b) Appellant argues that the trial court improperly admitted this testimony because the investigator's opinion about the direction

of the bullet that struck Jones in his thigh and buttock was based on scientific knowledge. Although Appellant does not cite any pertinent evidence law, it appears that he contends that the testimony was inadmissible under OCGA § 24-7-701 (a), which permits lay witness testimony in the form of opinions or inferences that are rationally based on the witness's perception, helpful to a clear understanding of the witness's testimony or the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge. We can assume (without deciding) that the admission of the investigator's opinion was an abuse of discretion, because it was harmless in any event.

The test for determining whether a nonconstitutional evidentiary error was harmless is whether it is highly probable that the error did not contribute to the verdicts. See *Thornton v. State*, 312 Ga. 224, 228 (862 SE2d 113) (2021). See also OCGA § 24-1-103 (a). In conducting harmless-error analysis, "we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done." *Thornton*, 312 Ga. at 228. In his brief here, Appellant

offers no explanation as to how the investigator's allegedly improper opinion affected the jury's verdicts. The path of the bullet that caused Jones's left buttock and right thigh wounds can be readily inferred from the surveillance video, as Jones was facing Appellant when the first shot was fired and turned to his right to flee as Appellant fired the other shots. There is no reason to believe that the investigator's brief testimony noting this point persuaded the jury to reject Appellant's claims that he shot Jones in self-defense or with an irresistible passion resulting from serious provocation.[3] There was little, if any, evidence to support those claims, while the properly admitted evidence of Appellant's guilt was compelling.

As discussed in Division 1 above, the evidence of Appellant's guilt, which included testimony from two eyewitnesses and the surveillance video recordings, showed that Appellant, who was

---

[3] OCGA § 16-5-2 (a) defines "voluntary manslaughter" as the killing of another person under circumstances that would otherwise be murder when the killer "acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." We express no opinion regarding whether a voluntary manslaughter instruction was properly given in this case.

jealous of Jones and had threatened to make him "disappear," approached Jones at the gas station, and they spoke calmly for a few moments. After one of the men said, "You a little man folk," Appellant suddenly pulled out a gun and fired four shots at Jones, who had nothing in his hands and turned to run, pulling out his own gun only after he had been shot. Given this evidence, the jury quite reasonably rejected Appellant's claims of self-defense and voluntary manslaughter. See, e.g., *Townsend v. State*, 312 Ga. 276, 281 n.3 (862 SE2d 304) (2021) (noting that "'it is well established that words alone, regardless of the degree of their insulting nature, will not in any case justify the excitement of passion so as to reduce the crime from murder to manslaughter'" and that evidence of an appellant's "'generally antagonistic relationship with the victim'" also does not support a voluntary manslaughter charge (citations omitted)); *McNeil v. State*, 284 Ga. 586, 588 (669 SE2d 111) (2008) (explaining that the jury was free to reject the appellant's claim of self-defense where an eyewitness saw the appellant and the victim engage in a verbal altercation before the appellant shot the victim, who had a

folded knife in his pocket but no weapon in his hands).

Moreover, the issue of the path of the bullet was not discussed at any other point during the presentation of the evidence. And although the closing arguments were not transcribed, Appellant does not contend that the prosecutor emphasized (or even mentioned) the objected-to testimony during his closing. See *Jackson v. State*, 306 Ga. 69, 80 (829 SE2d 142) (2019).

For these reasons, it is highly probable that any error in admitting the investigator's opinion testimony did not contribute to the jury's guilty verdicts. See *Thornton*, 312 Ga. at 229 (holding that any error in the admission of a GBI agent's testimony about how a particular bloodstain was formed was harmless, because there was no dispute that the victim was stabbed numerous times, the testimony did not implicate the appellant, and the evidence of his guilt was strong); *Carter v. State*, 310 Ga. 559, 564 (852 SE2d 542) (2020) (concluding in the context of an ineffective assistance of counsel claim that the appellant could not show that he was prejudiced by trial counsel's failure to object to a GBI agent's lay

11

witness testimony that shoeprints found at the crime scene had characteristics similar to the appellant's shoes on the ground that the testimony did not meet the requirements of OCGA § 24-7-701 (a), because the testimony "was of negligible importance, and the other evidence of [the] [a]ppellant's guilt was compelling"); *Brannon v. State*, 298 Ga. 601, 609-610 (783 SE2d 642) (2016) (holding that any error in the trial court's permitting a detective to offer opinion testimony identifying the victim in a surveillance recording was harmless, partly because the evidence of the appellant's guilt was overwhelming and misidentification of the victim was not the basis of his defense).

*Judgment affirmed. All the Justices concur.*

Decided December 14, 2021.

Murder. Muscogee Superior Court. Before Judge Gottfried.

*Anthony L. Johnson*, for appellant.

*Mark P. Jones, District Attorney, Frederick Lewis, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Alex M. Bernick, Assistant Attorney General*, for appellee.