**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: April 18, 2023

S23A0124.  BROCK v. THE STATE.

BOGGS, Chief Justice.

Appellant Bernard Brock challenges his 2018 convictions for malice murder and other crimes arising out of the beating death of Marlene Murray. On appeal, Appellant asserts that the trial court abused its discretion in admitting, pursuant to OCGA § 24-4-404 (b) ("Rule 404 (b)"), evidence that in June 2014 he had beaten Ansley Minkema, his girlfriend and co-defendant. Appellant also claims that when Minkema's testimony did not match the State's pretrial proffer, the trial court erred in not reversing its earlier ruling and striking her testimony and, relatedly, that his trial counsel performed deficiently in failing to move to strike her testimony.[1]

---

[1] The crimes occurred on May 6, 2015. On December 19, 2016, an Atkinson County grand jury indicted Appellant for malice murder (Count 1),

felony murder (Count 2), home invasion (Count 3), eight counts of aggravated assault (Counts 4-11), possession of a knife during the commission of a felony (Count 12), false imprisonment (Count 13), theft by taking (Count 14), and possession of a firearm by a convicted felon (Count 15). Before trial, the trial court nolle prossed counts 3, 5, 7, 9, 11, and 13. The trial court also bifurcated the firearm charge. Appellant was tried from December 10 to 12, 2018, and the jury found him not guilty of one count of aggravated assault (Count 8) and of the knife possession charge and guilty of the remaining charges. After hearing evidence in support of the firearm charge, the jury found him guilty on that count as well. On December 17, 2018, the trial court sentenced Appellant to life in prison without the possibility of parole for malice murder; a term of ten years in prison for theft by taking to run consecutively to Count 1; and a term of five years for the firearm charge, to run consecutively to "Count 8." The trial court merged the aggravated assault convictions into the malice murder conviction. The felony murder conviction was vacated by operation of law.

The State contends that the trial court erred in running the sentence on the count of possession of a firearm by a convicted felon consecutively to Count 8, a count on which the jury found Appellant not guilty. It appears that the reference to "Count 8" is a mere clerical error that arose from the use of a redacted indictment that was sent out with the jury and that the trial court's intent, as expressed at the sentencing hearing, was that the five-year sentence for possession of a firearm would run consecutively to the ten-year sentence for theft by taking, which was Count 14. In this regard, we note that upon return of the remittitur, the trial court would be authorized to correct the sentence. See OCGA § 17-10-1 (f) ("[W]ithin 120 days after receipt by the sentencing court of the remittitur upon affirmance of the judgment after direct appeal, . . . the court imposing the sentence has the jurisdiction, power, and authority to correct . . . the sentence."); *Marshall v. State*, 309 Ga. 698, 701 (2) (848 SE2d 389) (2020) (trial court authorized to correct merger error in sentencing upon return of remittitur).

On December 18, 2018, Appellant's trial counsel filed a timely motion for new trial. On February 13, 2019, attorney Mickey Johnson entered his appearance as motion-for-new-trial counsel. On May 13, 2019, Appellant filed a handwritten, pro se amended motion for new trial. On November 19, 2021, Johnson filed an amended motion for new trial that was essentially a word-for-word, typewritten copy of Appellant's pro se motion for new trial. After an evidentiary hearing on November 30, 2021, the trial court entered an order on February 11, 2022, denying the motion for new trial. Appellant, still represented by Johnson, filed a timely notice of appeal that was directed to the

As explained below, we conclude that even if the trial court erred in admitting or failing to strike Minkema's testimony regarding the June 2014 assault, the error was harmless. Appellant's claim that trial counsel provided ineffective assistance in failing to move to strike Minkema's testimony about the assault is waived. Accordingly, we affirm Appellant's convictions.

1. The evidence presented at Appellant's trial showed the following. On April 26, 2015, Murray reported to police that her car was stolen by a man she knew as "Brock." Deputy Robert Taft of the Atkinson County Sheriff's Office investigated Murray's report. He testified that Murray told him that Brock had borrowed her car but failed to return it. According to Deputy Taft, Appellant returned the

Court of Appeals, which transferred the appeal to this Court. The case was docketed in this Court as Case No. S22A0811. The argument section of Appellant's brief in Case No. S22A0811 was virtually the same as Appellant's pro se amended motion for new trial, contained many grammatical errors, and failed to comply with this Court's rules. Accordingly, on September 7, 2022, this Court struck the appeal from the docket, directed our Clerk of Court to redocket the appeal with a new case number, and directed Johnson to file a new brief within 20 days. This appeal was docketed on September 7, 2022, for the term beginning in December 2022 and submitted for decision on the briefs. Johnson filed an appellate brief that complied with our Rules on September 20, 2022.

3

car later that day, and no charges were brought against him.

On May 9, 2015, a police officer with the City of Douglas Police Department responded to a call reporting that a car had been found abandoned behind a residence. The officer testified that it was Murray's car, a white Chevrolet Malibu, and that the doors of the car were open, the floor mats were "laid out on the driver's side," and "[d]irt was thrown in the vehicle." The officer knew Murray's son and called him to advise him of what he had found. After the call, Murray's son, daughter-in-law, and daughter went to Murray's house to check on her. When they arrived at the home, they found the door unlocked and a foul odor coming from inside the home. Murray's daughter-in-law entered the house and found Murray's body lying face down on the floor in the living room area, with blood underneath her head and significant signs of decomposition.

The following day, Minkema's father arranged for Minkema to meet law enforcement officers at a local store. Minkema thereafter provided law enforcement officers an account of Murray's death, including Appellant's involvement. At trial, Minkema testified that,

4

about 10:00 p.m. on May 6, 2015, an acquaintance of Appellant's, Stephen Ogles, drove Appellant and Minkema to Murray's home in Atkinson County.[2] Ogles also testified that he drove Appellant and Minkema to Murray's home about 10:00 p.m. on May 6. Minkema further testified that Appellant was Murray's drug dealer, that he had borrowed Murray's car on several occasions, and that he wanted to borrow the car again that evening. According to Minkema, once Appellant and Minkema arrived at Murray's home, Minkema went into the bathroom while Appellant asked Murray about borrowing her car. Minkema testified that she heard Murray scream "No!" and that she emerged from the bathroom to find Murray lying on the ground. Appellant told Minkema to hold Murray's feet and ankles down, and Minkema did so. Appellant then beat Murray with a baseball bat and a metal antique iron, stabbed her with a knife, and smothered her with a pillow. Minkema helped Appellant clean up the scene, and they removed the bat, the knife, the pillow, Murray's

---

[2] Before Appellant's trial, Minkema pleaded guilty to voluntary manslaughter and other crimes and testified against Appellant.

purse, and Murray's pill bottles from the home. Minkema looked for the iron but was unable to find it.

Minkema testified that she and Appellant then took Murray's car and drove to the home of Appellant's cousin, Keyon Moffett. Moffett testified that Appellant and Minkema were driving a white Chevrolet or Ford and that Appellant asked to use Moffett's phone. Because Moffett's phone was not working, he took Appellant and Minkema to the home of a neighbor. Moffett added that he thought that Appellant and Minkema were "acting strange" and that "something wasn't right." Moffett also noticed Minkema "looking at a pocketbook." A "burn barrel" was located behind Moffett's neighbor's house, and, according to Minkema, she and Appellant left the purse, bat, and other evidence in the "burn barrel." Minkema testified that she and Brock then drove off in Murray's car and later left it behind an abandoned house. Law enforcement officers recovered a charred purse from the burn barrel and recovered the iron from under a sofa located near Murray's body. The knife and bat were never recovered. The iron was tested and found to have

6

Murray's blood on it. The medical examiner testified that Murray died of multiple blunt force injuries to the head, with sharp force injuries to her neck as a contributing factor. She added that the blunt force injuries were consistent with Murray being hit with a bat or a metal iron and that the sharp force injures were consistent with knife wounds. Finally, according to the medical examiner, Murray's ankles were bruised in a manner that was consistent with someone having held her down.

On May 12, 2015, Appellant was located and taken into custody. He declined to be interviewed that day, stating that "he needed to get it right and he had not had enough sleep." He was interviewed the next day by a GBI agent and denied being at Murray's house. Appellant first stated that he was with his niece on the night of the murder and that he remembered that because he stayed with his niece on the night that a "9-1-1 call was made in reference to an argument that he and Minkema had." The GBI agent discovered that the 911 call occurred on May 7, not May 6, and she asked Appellant about the discrepancy. Appellant then stated that

7

he had stayed with his niece on the night of May 6. When asked about the recovered iron, he "initially denied any knowledge" of it. He then stated, however, that his fingerprints might be on it because, about a year earlier, he had taken a woman to Murray's house to steal things, and the iron was one of the items stolen; he claimed to have returned it later. Appellant also said that Minkema could identify who had hit Murray, even though the agent had not yet divulged the manner of Murray's death to Appellant.

2. Appellant contends that the trial court erred in its pre-trial ruling allowing the State to introduce Rule 404 (b) evidence, through Minkema, that approximately one year before the crimes at issue, Appellant had beaten Minkema. Appellant also contends that, even if the trial court did not err in its pre-trial ruling, it erred in not excluding the evidence at trial on the ground that Minkema's testimony did not match the State's proffer at the pre-trial hearing. Finally, Appellant contends that trial counsel was constitutionally ineffective in failing to move to strike this portion of Minkema's testimony.

Before trial, the State filed a motion to present Rule 404 (b) evidence of an aggravated assault that Appellant committed against Minkema on June 26, 2014. The State asserted that the evidence was admissible to show motive and the absence of mistake or accident. See Rule 404 (b). At a pre-trial hearing on that motion, the State proffered that the evidence would show that Appellant assaulted Minkema because she refused to give him all the proceeds from her panhandling. The State argued that the Rule 404 (b) evidence was admissible in Appellant's murder trial in that Appellant killed Murray because she would not give him her car. The trial court admitted the evidence, ruling that its "probative value outweighs any prejudice to the Defendant."

At trial, Minkema testified about the June 26, 2014, incident. She said that she "jumped" on another woman who was "disrespecting [her]"; that Appellant broke up that altercation; and that, after he did so, he "knocked the crap out of [Minkema]" and "choked [her]" until she did not "remember anything else." She added that she "remember[ed] waking up in the hospital." Minkema

9

did not testify that her failure to give Appellant all of her panhandling money was the cause of the assault. Appellant did not object to or move to strike Minkema's testimony on the ground that it differed from the pre-trial proffer by the State.

We conclude that any error in admitting or failing to strike Minkema's trial testimony was harmless.[3]

> The test for determining whether a nonconstitutional evidentiary error was harmless is whether it is highly probable that the error did not contribute to the verdicts. In conducting harmless-error analysis, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done.

*Saxton v. State*, 313 Ga. 48, 51 (867 SE2d 130) (2021) (cleaned up).

Here, the evidence that Appellant killed Murray was strong. Minkema testified that she saw Appellant beat Murray with a bat and a metal iron and stab her with a knife and that the two of them stole Murray's car, drove it to Moffett's house, where Appellant and

---

[3] For purposes of appeal, we assume without deciding that Appellant preserved for ordinary appellate review the issue that the trial court erred in failing to strike Minkema's trial testimony on the ground that it differed from the State's proffer at the pre-trial hearing.

Minkema disposed of evidence in a nearby burn barrel, and then later left the car behind an abandoned house. Other evidence corroborated Minkema's testimony. This included evidence that Murray's car was found behind an abandoned house; evidence that the iron found near Murray's body had her blood on it; testimony from Moffett that Appellant and Minkema were driving a car that was similar to the one they took from Murray; and testimony that a charred pocketbook was located in the burn barrel. In addition, the medical examiner's testimony supported Minkema's description of the attack on Murray. She testified that Murray died from blunt and sharp force injuries consistent with being hit with a bat and metal iron and being stabbed with a knife and that bruising on her ankles was consistent with her being held down. In addition to Minkema's testimony and the corroborating evidence, there was Appellant's statement to police, which, in addition to being inconsistent and contradictory, displayed knowledge about the murder that police had not revealed to Appellant.

Under these circumstances, we conclude that it is highly

probable that any error in admitting or failing to strike Minkema's

testimony regarding the June 2014 incident did not contribute to the

verdicts finding Appellant guilty of murder and other crimes. See

*Fletcher v. State*, 303 Ga. 43, 47 (810 SE2d 101) (2018) (holding that

any error in admitting other crimes evidence was harmless given the

strength of the evidence against the defendant); *Davis v. State*, 301

Ga. 397, 400 (801 SE2d 897) (2017) (same).[4]

*Judgment affirmed. All the Justices concur.*

---

[4] Appellant also argues that trial counsel was constitutionally ineffective in failing to move to strike Minkema's testimony regarding the June 2014 incident once it became apparent that her trial testimony did not match the State's proffer at the pre-trial hearing. However, Appellant had new counsel, Johnson, at the motion for new trial proceedings and did not raise this claim of ineffective assistance of trial counsel. Appellant thus did not raise this claim at the "earliest practicable moment" and failed to preserve the claim for appellate review. See *Elkins v. State*, 306 Ga. 351, 361 (830 SE2d 217) (2019) (holding that when a defendant is represented by new counsel at the motion for new trial stage, claims of ineffective assistance of trial counsel that are not raised at that stage are not preserved for appellate review).