NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: September 30, 2025

S25A0895. WILLIAMS v. THE STATE.

PINSON, Justice.

Brandon Williams was convicted of malice murder and other crimes in relation to the deaths of Natalie Nation and Cole Nation.[1] On appeal, he argues that the trial court erred by admitting a hearsay statement about prior violence he committed against

---

[1] Williams was indicted by a Gwinnett County grand jury on July 12, 2017. He was charged with two counts of malice murder, two counts of felony murder, one count of aggravated assault, and one count of cruelty to children in the first degree. Following a jury trial that took place from November 27, 2023, to December 1, 2023, the jury found Williams guilty on all counts. The trial court sentenced Williams to life without parole for each malice murder count, with the sentences running consecutively. The trial court purported to merge each of the remaining counts with the malice murder counts, but the felony murder counts were vacated by operation of law and the cruelty to children count should not have merged with the malice murder count. See *Williams v. State*, 312 Ga. 386, 393 (2021); *Linson v. State*, 287 Ga. 881, 885–86 (2010). But because the State has not cross-appealed and the merger error does not harm Williams, we decline to exercise our discretion to correct it. See, e.g., *Dixon v. State*, 302 Ga. 691, 696–98 (2017).

Williams timely filed a motion for new trial, which the trial court denied. Williams then timely appealed to this Court. The case was docketed to this Court's April 2025 term and submitted for a decision on the briefs.

Natalie under OCGA § 24-8-807 (Rule 807), or the "residual hearsay exception." But the trial court did not abuse its discretion in applying the requirements of this exception to the rule against hearsay, so Williams's convictions are affirmed.

1. The evidence at trial showed the following. Williams lived with his father and his father's girlfriend, Natalie. Cole, Natalie's son, sometimes stayed with them and sometimes stayed with his grandparents. Neighbors testified that they had heard Williams yelling at Natalie in the past.

On the evening of April 16, 2017, Williams's father was outside in the driveway of his home with his friend, Brent Lenz, whom he was teaching how to do repairs on his truck. Sometime after they began looking at the truck, Williams came outside. Lenz testified that Williams said something about "burning the house down." Neighbors testified that they heard Williams yelling things like "get out" and "leave" to Natalie that night. They also heard him say "why are you still here?" and "I'm going to kill all of you."

Williams left the driveway and began walking in the direction

of a nearby gas station. Williams's father and Lenz remained in the driveway, and Lenz left when they were done with the truck. Williams's father then went inside. When he went upstairs, he found Natalie and Cole unconscious in Natalie's room. He testified that there was a towel tied around Natalie's neck.

Williams's father called Lenz and, after Lenz returned to the home, called 911. Responding police officers attempted CPR on Natalie and Cole until paramedics arrived on scene and transported them to the hospital. Cole was pronounced dead shortly after arriving at the hospital. Natalie survived for several hours but eventually passed away too. At trial, the medical examiner who conducted their autopsies testified that Natalie died by asphyxia, and Cole by asphyxia and blunt-force trauma to the head. The medical examiner ruled that the manner of death for both was homicide.

While first responders gave aid to Natalie and Cole at the house, Williams was at the nearby gas station. While there, he approached a man in a truck and asked if he could get a ride to

3

Texas. The man declined, and Williams remained at the gas station. A short time later, officers arrived at the gas station and arrested Williams. While in custody, detectives noticed that Williams had a bruise around his wrist.

At trial, the State introduced evidence that Williams's DNA was found on the towel around Natalie's neck. The State also called Lenz to the stand. Lenz's trial testimony largely consisted of describing the events that he observed on the day of the murders. He also testified, however, to something Natalie told him roughly a week prior to her death, which the trial court admitted under the residual hearsay exception and over Williams's objection. OCGA § 24-8-807. He said that Natalie told him that, on one occasion, Williams had choked her until she lost consciousness and then "brought [her] back to life." In their conversation, she asked Lenz if it was wrong that she forgave Williams for choking her. And she said that "if anything ever happen[ed] to [her]" that Lenz should "let everybody know that [she] loved Cole."

2. Williams contends that the trial court erred in admitting

4

Natalie's prior statement under the residual hearsay exception. This exception applies when a hearsay statement is not "covered" by other exceptions to the rule against hearsay but has "equivalent circumstantial guarantees of trustworthiness," is "offered as evidence of a material fact," is "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts," and its admission would best serve the "general purposes of the rules of evidence and the interests of justice." OCGA § 24-8-807

Williams contends that the statement lacked the necessary "circumstantial guarantees of trustworthiness," was not offered as evidence of a "material fact," and that it was not more probative on the point for which it was offered than any other evidence. In determining whether to admit a statement under this provision, the trial court "should consider the totality of the circumstances." *Siders v. State*, 320 Ga. 367, 377 (2024) (quotation marks omitted). We review the admission of a statement under this exception for an abuse of discretion. Id. at 378. And "we are particularly hesitant to

overturn a trial court's admissibility ruling under the residual hearsay exception absent a definite and firm conviction that the court made a clear error of judgment in the conclusion it reached based upon a weighing of the relevant factors." *Thompson v. State*, 302 Ga. 533, 544 (2017) (cleaned up).

First, under our precedent, the trial court was within its discretion to determine that the statement had sufficient guarantees of trustworthiness. A statement admitted under this rule must have guarantees of trustworthiness "equivalent to cross-examined former testimony, statements under a belief of impending death, statements against interest, and statements of personal or family history." *Smart v. State*, 299 Ga. 414, 421 (2016) (citation omitted). Relevant here, we have repeatedly held that circumstances involving "a victim's description of prior acts of domestic violence against her to her family and friends" carry "an increased level of trustworthiness." *Merritt v. State*, 311 Ga. 875, 887 (2021). See also *Rawls v. State*, 310 Ga. 209, 214–15 (2020); *Jacobs v. State*, 303 Ga. 245, 251 (2018); *Smart*, 299 Ga. at 422. And here, contrary to

Williams's argument on appeal, the evidence showed a fairly close relationship between Natalie and Lenz: Lenz testified that he and Natalie had known each other since middle school, grew up in the same neighborhood, were "good friends," spoke about once a week, and confided in each other about personal topics including relationships. Whether or not that relationship as described reached the same level of closeness as those in some of our past decisions, see, e.g., *Ash v. State*, 312 Ga. 771, 786 (2021) (witness described declarant as their "best friend" whom they "loved and trusted"); *Rawls*, 310 Ga. at 214 (best friends who talked on the phone three or four times per day); *Jacobs*, 303 Ga. at 247 (close friend and declarant were "like sisters"), the trial court was within its discretion to conclude that sufficient guarantees of trustworthiness existed given the evidence presented. Cf. *State v. Kenney*, 315 Ga. 408, 418–20 (2023) (upholding trial court's refusal to admit evidence under Rule 807 where no evidence was presented regarding the closeness of the relationship between witness and declarant).

Second, the statement here was "evidence of a material fact."

OCGA § 24-8-807(1). We have said that a victim's "own words about the nature of her relationship with" the defendant, see *Watkins v. State*, 320 Ga. 862, 867 (2025), and her statements to others that "shed light on the relationship between" the defendant and the victim "me[e]t Rule 807's materiality requirement," see *Siders v. State*, 320 Ga. 367, 378 (2024). Here, Natalie's statement to Lenz that Williams had strangled her before to the point of unconsciousness "shed light on" their relationship and so met the materiality requirement under Rule 807.[2]

Finally, the trial court was within its discretion to conclude that the statement was "more probative on the point for which it is

---

[2] On appeal, Williams suggests that the "substance" of the statement would have been inadmissible under Rule 404(b), which says evidence of other acts are not admissible to "prove the character of a person in order to show action in conformity therewith." But Williams did not object to the statements under OCGA § 24-4-404(b) at trial, nor has Williams separately made any such argument on appeal, and he cites no authority for his suggestion that consideration of Rule 404(b) is necessarily part of an inquiry whether Rule 807's exception to hearsay applies. See also OCGA § 24-1-105 ("When evidence which is admissible as to one party or for one purpose but which is not admissible as to another party or for another purpose is admitted, the court, *upon request*, shall restrict the evidence to its proper scope and instruct the jury accordingly." (emphasis added)).

offered than any other evidence" that the proponent can reasonably secure. OCGA § 24-8-807(2). A victim's own statement describing the defendant's prior violence toward her is generally "more probative" even when other witnesses testify about the same subject. See *Shellman v. State*, 318 Ga. 71, 78 (2024). There was other strong circumstantial evidence that Williams strangled Natalie: Natalie was found dead, with Williams's DNA on the towel around her neck, after Williams had been alone in the home with her and the other victim; Williams had shouted at Natalie earlier in the day to "get out" of the home; and he had threatened to "kill all of you." But the hearsay statement was the only evidence that Williams had strangled Natalie at an earlier time, so it was within the trial court's discretion to conclude that the hearsay statement was "more probative" of who did the killing and the manner of killing than "any other evidence." See id.

*

Our review of the trial court's decision to apply the residual hearsay exception here is deferential. Because we do not have a

"definite and firm conviction that the court made a clear error of judgment in the conclusion it reached based upon a weighing of the relevant factors" under Rule 807, *Thompson*, 302 Ga. at 544, the trial court did not abuse its discretion in concluding that the residual hearsay exception applied. So Williams's claim fails.

*Judgment affirmed. All the Justices concur.*